D/F

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------------------X
ANDRE COLLIER,

                              Petitioner,                                    **MEMORANDUM & ORDER**

            -against-                                                        **10-CR-820-2 (NGG)**
                                                                             **16-CV-3638 (NGG)**

UNITED STATES OF AMERICA,

                              Respondent.
-----------------------------------------------------------------------X
NICHOLAS G. GARAUFIS, United States District Judge.

On January 18, 2013, Petitioner Andre Collier pleaded guilty to one count of firearm-

related murder under 18 U.S.C. § 924(j)(1) in connection with the 2009 killing of Earl Mangin in

Staten Island, New York. (Gov't Mem. in Opp'n to Pet. ("Gov't Opp'n") (Dkt. 194) at 3.)

Petitioner was sentenced to 420 months of incarceration and 5 years of supervised release, and

ordered to pay $7,800 in restitution. (Id. at 5). He now brings the instant petition for a writ of

habeas corpus pursuant to 28 U.S.C. § 2255, seeking vacatur of his sentence (the "Petition").

(Pet'r Mot. to Vacate ("Pet.") (Dkt. 178 at ECF p.6)). Petitioner seeks to lodge a collateral

challenge to his sentence on multiple grounds. He first argues that this court lacked subject

matter jurisdiction to convict him of firearm-related murder. (Mem. in Supp. of Pet. ("Pet.

Mem.") (Dkt. 178 at ECF p.19).) Next, he argues that his conviction must be overturned because

§ 924(j)(1) should be struck down as unconstitutionally vague in light of the Supreme Court's

decision in Johnson v. United States, 135 S. Ct. 2551 (2015). (Pet. Mem.) Finally, he makes

multiple claims of ineffective assistance of counsel, alleging deficient representation in a prior

state proceeding, in the plea bargaining process leading up to his conviction, and on direct appeal

of his federal conviction. (Pet'r Suppl. Mem. in Supp. of Pet. ("Suppl. Pet.") (Dkt. 186 at ECF

p.1).) For the reasons stated below, the Petition is DENIED.

1

## I.    BACKGROUND

Petitioner does not dispute the essential facts of the murder that led to his conviction. (See Pet'r Reply ("Reply") (Dkt. 197-1) at 4-5.) On November 14, 2009, Petitioner shot Mangin twice in the legs and once in the head on the front steps of Mangin's Staten Island apartment. (Gov't Opp'n at 3.) The murder came one week after a disagreement at a party culminated in the death of Jermaine Dickerson, a close friend of Petitioner's. (Id. at 2.) Mangin was affiliated with the Gorilla Bloods street gang, members of which killed Dickerson. (Id.)

The Petition does not dispute facts in the record showing that Petitioner had previously supplied crack cocaine to Mangin, and that Petitioner had a disagreement with Mangin over drug sales, resulting in an altercation in the summer of 2009 during which Petitioner beat Mangin with a vacuum cleaner. (Reply at 4.) Petitioner does contest that his drug dispute with Mangin was ongoing at the time of the murder, and suggests that Dickerson's killing provided the sole motivation for the murder to which Petitioner pleaded guilty. (Id. at 4-5.)

### A.    Procedural History

On March 12, 2010, Petitioner was indicted on state charges of murder, criminal possession of a weapon, and grand larceny. (See Pet'r Writ of Error Coram Nobis (Dkt. 186 at ECF p.56) at 2.) In September 2010, he was offered a plea agreement by the Richmond County District Attorney's office, but rejected the agreement. (See id.; Suppl. Pet. at 5.) Ultimately, on July 8, 2011, the indictment was dismissed and sealed upon application by the state prosecutor. (See July 14, 2016, Decision & Order, People v. Collier, Indictment No. 62-2010 (Dkt. 186 at ECF p.63).)

On December 7, 2010, Petitioner, along with four co-conspirators, was indicted in federal court on drug and firearms charges. (Indictment (Dkt. 15).) On March 1, 2012, the Government

2

filed a six-count superseding indictment, charging Petitioner with, among other things, the firearm-related murder of Earl Mangin in violation of 18 U.S.C. § 924(j)(1). (See Superseding Indictment (Dkt. 65) ¶ 6.) On January 18, 2013, Petitioner pleaded guilty to the charge of firearm-related murder. (Jan. 18, 2013, Min. Entry (Dkt. 130).)

On August 1, 2013, the court imposed a sentence of 420 months imprisonment, within the guidelines range of 360 months to life. (Gov't Opp'n at 5; see Aug. 1, 2013, Min. Entry (Dkt 154).) Petitioner's plea agreement included a waiver of his right to appeal and to collaterally attack his conviction or sentence, "in the event that the court imposes a term of imprisonment of life or below." (See Plea Agreement (Dkt. 194-1) ¶ 4.) Despite having agreed to this provision, Petitioner filed a notice of appeal from his conviction and sentence on August 8, 2013 and requested the appointment of counsel to assist in his appeal. (Pet'r Notice of Appeal (Dkt. 153).)

On March 4, 2014, Petitioner's appellate counsel filed a brief with the Second Circuit requesting, pursuant to Anders v. California, 386 U.S. 738 (1967), that he be relieved as Petitioner's counsel because there existed no non-frivolous issues for appellate review. (Anders Br. for Pet'r ("Anders Br.") (Dkt. 186 at ECF p.24) at 11.) Petitioner's counsel's argument turned largely on Petitioner's statements during his plea allocution that his plea was informed and voluntary, as well as the provision in the plea agreement waiving Petitioner's right to appeal his conviction or sentence. (Id. at 8-10.) On December 22, 2014, the Second Circuit ordered supplemental briefing as to whether this court sufficiently complied with Federal Rule of Criminal Procedure 11(b)(1)(N), which requires that, before the district court accepts a guilty plea, it must inform the defendant of, and determine that he understands, "the terms of any plea-agreement provision waiving the right to appeal or to collaterally attack the sentence." Order, United States v. Collier, No. 13-3075 (2d Cir. Dec. 22, 2014) (quoting Fed. R. Crim. P.

11(b)(1)(N)).  Petitioner's counsel filed a supplemental Anders brief on August 22, 2015,

reiterating that the plea hearing established that the plea was knowing and voluntary, and that

any incorrect advice in the plea hearing fell short of plain error and did not prejudice Petitioner.

(Suppl. Anders Br. (Dkt. 186 at ECF p.40).)  On August 28, 2015, the Second Circuit summarily

affirmed Petitioner's conviction and granted his counsel's motion to withdraw.  (Mandate of

USCA (Dkt. 174).)

On June 28, 2016, Petitioner filed a petition for a writ of habeas corpus in this court

pursuant to 28 U.S.C. § 2255, alleging that his conviction was unconstitutional in the wake of the

Supreme Court's 2015 decision in Johnson v. United States, 135 S. Ct. 2551 (2015), and that this

court lacked subject-matter jurisdiction to convict and sentence Petitioner.  (Pet.; see Pet. Mem.

at 1.)

**B.     Johnson v. United States**

Because Petitioner challenges his conviction on the ground that § 924(j)(1) is

unconstitutional in light of Johnson v. United States, the court begins by summarizing the void-

for-vagueness doctrine developed by the Johnson line of cases.  Johnson involved a challenge to

the Armed Career Criminal Act ("ACCA"), 18 U.S.C. § 924(e), pursuant to which a defendant

with three prior convictions for a "violent felony or a serious drug offense" was subject to an

increased sentence.  135 S. Ct. at 2555.  In language similar to the subsections defining "crime of

violence" within § 924(c), the ACCA described a "violent felony" as a felony (or similar crime

by an armed juvenile) that either "has as an element the use, attempted use, or threatened use of

physical force against the person of another," or alternatively, "is burglary, arson, or extortion,

involves use of explosives, or otherwise involves conduct that presents a serious potential risk of

4

physical injury to another." § 924(e)(2)(B) (emphasis added). The underlined language is often referred to as the ACCA's "residual clause."

Johnson began by noting that the Due Process Clause of the Fifth Amendment prohibits criminal prosecution under a statute "so vague that it fails to give ordinary people fair notice of the conduct it punishes, or so standardless that it invites arbitrary enforcement." 135 S. Ct. at 2556-57. The Court concluded that the residual clause failed the due process requirements, stating that "indeterminacy of the wide-ranging inquiry required by the residual clause both denies fair notice to defendants and invites arbitrary enforcement by judges." Id. at 2557. Specifically, "[t]wo features of the residual clause conspire to make it unconstitutionally vague." Id. at 2557. First, it "leaves grave uncertainty about how to estimate the risk posed by a crime." Id. Second, it "leaves uncertainty about how much risk it takes for a crime to qualify as a violent felony." Id. at 2558. Accordingly, the residual clause—though not the remainder of the ACCA's definition of a violent felony—was invalidated. Id. at 2563. A year later, the Court held that its decision in Johnson applied retroactively on collateral review because it announced a new substantive rule of constitutional law. See Welch v. United States, 136 S. Ct. 1257, 1268 (2016).

The principles of Johnson have found application in situations similar to the ACCA's residual clause. In Sessions v. Dimaya, 138 S. Ct. 1204 (2018), the Court struck down the residual clause of 18 U.S.C. § 16(b), which defines "crime of violence" as including "any other offense that is a felony and that, by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense." Dimaya, 138 S. Ct. at 1213. The Court found that this clause, like the one at issue in Johnson,

fatally flawed because it "produces . . . 'more unpredictability and arbitrariness than the Due Process Clause tolerates.'" Id. at 1216 (quoting Johnson, 135 S. Ct. at 2558).

More recently, however, the Second Circuit declined to hold that the residual clause of 18 U.S.C. § 924(c), which increases the criminal penalties for any person who uses or carries a weapon during a "crime of violence" or drug trafficking crime, was unconstitutionally vague. See United States v. Barrett, 903 F.3d 166, 178 (2d Cir. 2018). Within § 924(c), "crime of violence" is defined by an elements clause identical to the one in § 924(e), and also by a residual clause designating as a crime of violence any felony offense that "by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense." § 924(c)(3)(b). The court distinguished this residual clause from the similar clauses at issue in Johnson and Dimaya, stating that "the predicate offense defined by [§ 924(c)(3)(b)] is an element of the crime of pending prosecution, not a crime of prior conviction." Barrett, 903 F.3d at 169. Because a jury, "in deciding guilt, can determine whether the predicate offense 'by its nature, involve[d] a substantial risk that physical force . . . may be used,'" prosecution under the residual clause of § 924(c) does not raise the same constitutional vagueness issues as the statute in Johnson. Id. Under Barrett, the "identification of a crime of violence under § 924(c)(3)(B) is properly made by a jury on a conduct-specific basis," while the court must decide whether a predicate offense was a crime of violence under the "elements clause" found in § 924(c)(3)(A). Id. at 182-84. Where a jury is not properly charged to make such a finding, the instruction will be subject to harmless error analysis by the court. Id. at 184.

## II.    DISCUSSION

A federal prisoner may file a petition to collaterally attack his sentence on the grounds that it was imposed "in violation of the Constitution or laws of the United States." 28 U.S.C. § 2255(a).  Petitioner claims that his conviction violates the Fifth Amendment because he was convicted under a statute that should be found void for vagueness, and that it violates the Sixth Amendment because he was deprived of the right to effective assistance of counsel at several steps in his prosecution.  (Pet. Mem. at 1; Suppl. Pet. at 2.)  Petitioner further challenges his sentence on the grounds this court lacked subject-matter jurisdiction over the firearm-related murder charge for which he was convicted.  The Government argues that the petitions in their entirety are barred by the terms of Petitioner's plea agreement, which includes a waiver of the right to collaterally attack his conviction or sentence.  (Gov't Opp'n at 5.)  Although the court does not agree with the Government that all of Petitioner's arguments are barred by his plea agreement, the court ultimately DENIES the Petition in full.

### A.    Subject Matter Jurisdiction

Petitioner first contends that this court lacked subject-matter jurisdiction to charge, convict, and sentence him absent a finding that the murder took place within the court's territorial or maritime jurisdiction.  (Pet. Mem. at 11.)  Petitioner's claim is based on the fact that the statute under which he was convicted, § 924(j), incorporates the definition of murder from 18 U.S.C. § 1111, which contains a provision setting forth the penalties for murder within "the special maritime and territorial jurisdiction of the United States," § 1111(b).  (See Pet. Mem. at 3-11.)

Petitioner's construction of the statute is inconsistent with the settled interpretation of the relationship between these sections: "[Section] 924(j) 'incorporates only the definition of

murder' set out in § 1111(a), not the jurisdictional basis set out in § 1111(b)." United States v. Lee, 660 F. App'x 8, 16-17 (2d Cir. 2016) (summary order) (quoting United States v. Young, 248 F.3d 260, 275 (4th Cir. 2001)), cert. denied, 137 S. Ct. 1599 (2017). "Rather, § 924(j) sets forth its own independent jurisdictional basis by incorporating 18 U.S.C. § 924(c), which covers the commission of 'any crime of violence or drug trafficking crime . . . for which [a] person may be prosecuted in a court of the United States.'" Id. (alterations in original) (quoting § 924(c)(1)(A)); see also United States v. Ostrander, 411 F.3d 684, 687 (6th Cir. 2005) (finding that § 924(j) incorporates only the definition of murder contained in § 1111(a)). Because the firearm-related murder of which Petitioner was convicted was clearly a crime subject to prosecution in a state court, subject-matter jurisdiction existed in this case.

### B.    Waiver of Collateral Attack

In his plea agreement, Petitioner agreed not to file an appeal or collaterally challenge his conviction or sentence "in the event that the [c]ourt imposes a term of imprisonment of life or below." (Plea Agreement ¶ 4; Gov't Opp'n at 5.)  The government argues this waiver provision should preclude collateral challenge, and that the Petition should therefore be denied in its entirety.  (Gov't Opp'n at 5.)

With limited exception, courts will enforce a knowing and voluntary waiver of the right to appeal and collateral attack.  See Sanford v. United States, 841 F.3d 578, 580 (2d Cir. 2016) ("While plea agreements are to be applied narrowly and construed strictly against the government, exceptions to the presumption of the enforceability of a waiver . . . occupy a very circumscribed area of our jurisprudence." (alteration in original) (internal citation and quotation marks omitted)).  A defendant who executes such a waiver may not make a collateral challenge to his sentence or conviction based on events that occurred prior to entry of the guilty plea.  See

Parisi v. United States, 529 F.3d 134, 138 (2d Cir. 2008); see also Tollett v. Henderson, 411 U.S. 258, 267 (1973) ("When a criminal defendant has solemnly admitted in open court that he is in fact guilty of the offense with which he is charged, he may not thereafter raise independent claims relating to the deprivation of constitutional rights that occurred prior to the entry of the guilty plea."). While a voluntary waiver of collateral attack is generally enforceable, a criminal defendant does not waive the right to appeal or collateral attack on the basis that "the plea itself, including the waiver, was not intelligent or voluntary." United States v. Ritter, 700 F. App'x 10, 11 (2d Cir. 2017) (summary order) (citation omitted). So, while Petitioner may not collaterally challenge his conviction under a plea agreement based on events that took place prior to the negotiation and acceptance of a plea, he may challenge the adequacy of the process resulting in the plea agreement, if his consent to the agreement was obtained involuntarily or was not given knowingly and competently. See Parisi, 529 F.3d at 138 ("In challenging the ineffectiveness of counsel in connection with a plea agreement, a defendant is challenging the 'constitutionality of the process by which he waived [his right to appeal].'" (alteration in original) (quoting United States v. Hernandez, 242 F.3d 110, 113 (2d Cir. 2001)).

While a waiver term does not bar a defendant from challenging his plea agreement when deficient advice from counsel during the plea-bargaining process effectively rendered his consent to that agreement involuntary, he may not sidestep a collateral attack waiver merely by alleging that counsel's advice caused him to bargain from a weakened position. Parisi, 529 F.3d at 138-39. Although "[e]verything that occurs prior to a guilty plea or entry into a plea agreement informs the defendant's decision to accept or reject the agreement," a claim for ineffectiveness must rest on more than an allegation that counsel's advice before the plea-bargaining stage ultimately led the defendant to consent to a plea from an unfavorable bargaining position. See

id. at 138. A defendant cannot show consent was not intelligent or voluntary merely by pointing out "the multitude of ways in which pre-plea events might reduce the strength of the defense and worsen the defendant's bargaining power." Id.

Petitioner's Johnson claim is barred by the terms of his plea agreement. Petitioner does not allege that he failed to understand the offense to which he was pleading due to ineffective assistance of counsel; rather, he argues that his conviction must be overturned because of a change in law announced by the Supreme Court after his conviction. (Pet. at 3 ("The Petitioner's contention is that the Supreme Court's recent decision in Johnson . . . renders the residual clause of [§ 924(c)] unconstitutionally vague . . . .").) The Second Circuit has clearly announced that collateral attack waivers in this context remain enforceable, and that a change in the law does not supply a basis for failing to enforce a plea agreement's collateral attack waiver: "the possibility of a favorable change in the law after a plea is simply one of the risks that accompanies pleas and plea agreements." Sanford, 841 F.3d at 580 (quoting United States v. Lee, 523 F.3d 104, 107 (2d Cir. 2008)). For this reason, the Second Circuit has enforced waivers in direct appeals despite the presence of Johnson claims. See id. at 581 (collecting cases).

Petitioner has also waived his ineffectiveness claim regarding an early state plea agreement that he rejected. Petitioner alleges that, in 2010, he received—and rejected—a plea offer in the course of his state prosecution. (Suppl. Pet. at 5-6.) He claims that he only rejected the state plea offer due to his state-court counsel's "erroneous advice," and that, had he accepted the plea, he would have escaped the federal charges for which he is now serving a sentence. (Id. at 5-6.) Whatever the merits of this claim, it is barred by the collateral-attack waiver in Petitioner's plea agreement. Even if Petitioner had received legally deficient advice which caused him to reject the state plea agreement, that sequence of events could not render

10

Petitioner's acceptance of the <u>federal</u> agreement constitutionally deficient. Petitioner's

ineffectiveness claim regarding his state counsel does not allege that his agreement to the federal

collateral waiver provision was incompetent or unknowing. (<u>See id.</u> at 5-6.) Petitioner

knowingly gave up his right to challenge his conviction, and his rejection of the prior state plea

in no way casts doubt on the sufficiency of advice from his federal counsel, nor on the adequacy

of the process that culminated in his voluntary acceptance of the federal plea agreement. The

collateral-attack waiver in his plea agreement therefore bars this claim.

### C.     Ineffective Assistance Of Counsel

In addition to the waived claim of ineffective assistance during state proceedings,

Petitioner alleges ineffective assistance of counsel during the plea bargaining process leading up

to his federal conviction and on direct appeal of his conviction. Because the Sixth Amendment

provides criminal defendants with the right to effective assistance of counsel, inadequate

representation is a basis for relief under § 2255. <u>Morales v. United States</u>, 635 F.3d 39, 43 (2d

Cir. 2011). Petitioner's claims on this front survive his waiver of collateral attack because he the

allegedly ineffective assistance affected the validity of the plea itself. <u>See United States v.</u>

<u>Lewis</u>, 717 F. App'x 21, 24-25 (2d Cir. 2017) (summary order).

To establish a claim for ineffective assistance of counsel under the Sixth Amendment, a

petitioner must satisfy the stringent two-prong test set forth in <u>Strickland v. Washington</u>, 466

U.S. 668 (1984):

> First, the defendant must show that counsel's performance was
> deficient. This requires showing that counsel made errors so serious
> that counsel was not functioning as the "counsel" guaranteed the
> defendant by the Sixth Amendment. Second, the defendant must
> show that the deficient performance prejudiced the defense. This
> requires showing that counsel's errors were so serious as to deprive
> the defendant of a fair trial, a trial whose result is reliable.

<u>Id.</u> at 687.

Because it "is all too tempting for a defendant to second-guess counsel's assistance after conviction or adverse sentence," judicial scrutiny of counsel's performance must be highly deferential and "a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." Id. at 689. The standard for prejudice is also stringent: "The defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id. at 694. The two-part standard of Strickland also applies in the context of a criminal defendant's right to effective assistance in considering the offer of a plea bargain. Lafler v. Cooper, 566 U.S. 156, 162-63 (2012). To demonstrate prejudice in the context of plea agreements, a defendant must show the outcome of the plea process would have been different with competent advice. Id. "If th[e] right [to effective counsel] is denied, prejudice can be shown if loss of the plea opportunity led to a trial resulting in a conviction on more serious charges or the imposition of a more severe sentence." Id. at 168.

A petitioner making a collateral ineffectiveness challenge is entitled to an evidentiary hearing "[u]nless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief." 28 U.S.C. § 2255(b); see Raysor v. United States, 647 F.3d 491, 494 (2d. Cir 2011). To warrant a hearing, a defendant "need establish only that he has a 'plausible' claim of ineffective assistance of counsel, not that 'he will necessarily succeed on the claim.'" Puglisi v. United States, 586 F.3d 209, 213 (2d Cir. 2009) (quoting Armienti v. United States, 234 F.3d 820, 823 (2d Cir. 2000)). "Moreover, '[t]he procedure for determining whether a hearing is necessary is in part analogous to . . . a summary judgment proceeding." Raysor, 647

F.3d at 494 (quoting <u>Puglisi</u>, 586 F.3d at 213). "If material facts are in dispute, a hearing should usually be held, and relevant findings of facts made." <u>Id.</u> (quoting <u>Puglisi</u>, 586 F.3d at 213).

### 1. Federal Plea Proceedings

Petitioner claims ineffective assistance of counsel in the consideration of his federal plea bargain. Specifically, he contends that he suffered prejudice resulting from his counsel's alleged delay in filing motions following Petitioner's indictment. (Suppl. Pet. at 3.) He further alleges that his agreement was "influenced" by his counsel's insistence that a plea would only be accepted if he admitted the murder was in furtherance of a charged drug conspiracy—a fact which he claims his counsel knew was false at the time of the agreement. (<u>Id.</u> at 1-3.) Petitioner suggests that, had he not made this admission, his sentence would constitute an application of the residual clause of § 924(c), making him eligible for relief under <u>Johnson</u>. Petitioner argues he is entitled to an evidentiary hearing to determine whether he was effectively "coerced" into accepting the terms of the plea agreement by his counsel's advice that he allocute to the statement regarding a charged drug conspiracy. (Pet'r. Reply at 5.)

Petitioner does not allege facts sufficient to show ineffective assistance of counsel with regard to the filing of defense motions. While he may have wanted his counsel to file a motion for a speedy trial, Petitioner has not shown that counsel's failure to do so was unreasonable or prejudiced him. The claim that the exclusion of time allowed the Government to gain a strategic advantage in its prosecution of Petitioner (Suppl. Pet. at 3) does not rise to the level of unconstitutional conduct. Petitioner cannot demonstrate "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different," <u>Strickland</u>, 466 U.S. at 694, and so the court rejects his claim of ineffective assistance of counsel regarding the filing of defense motions.

Petitioner also alleges that his plea was involuntary and "coerced" because counsel advised him that his plea would only be accepted if he pleaded guilty to committing the murder in furtherance of the charged drug conspiracy. (Pet'r. Reply at 3-4.) Petitioner alleges his counsel knew that the murder was not committed in furtherance of a drug conspiracy, and asks for an evidentiary hearing to determine whether his plea was coerced. (Pet'r. Reply at 1-2, 4.) On the facts alleged, Petitioner cannot establish ineffective assistance of counsel in violation of the Sixth Amendment.

First, as the Government correctly argues, this court is entitled to rely on Petitioner's statements from his plea colloquy which establish that he committed the murder of Earl Mangin in furtherance of a drug conspiracy. (Gov't Opp'n at 13.) Indeed, during his plea allocution, Petitioner confirmed that his plea was voluntary, that he was not threatened or forced to offer his guilty plea, and that he committed the murder "in relation to a drug conspiracy [he] participated in." (Id. at 41-42; see Tr. of Jan. 18, 2013, Hrg. (Dkt. 129-2) at 23:6-7.) The court is entitled to rely on such sworn statements in open court. See Rosenberger v. United States, 133 F. App'x 799, 801 (2d Cir. 2005) (summary order) (holding that where a petitioner "set[s] forth no evidence, other than his self-serving, conclusory allegations, that he was coerced into pleading guilty," a court may rely on statements in a plea allocution when the "plea allocution, when viewed as a whole, reflects his understanding of the consequences of his guilty plea"); see also Puglisi, 586 F.3d at 214 ("[A] district court need not assume the credibility of factual assertions . . . where the assertions are contradicted by the record in the underlying proceeding."). Petitioner states that he would have preferred not to allocute as he did, but did so on advice of counsel. (Reply at 2.) However, he does not point to specific incidents of "coercion," nor does

he claim that he was misled by his counsel as to the nature of the offense to which he pleaded guilty.

Even assuming Petitioner's allegations are true, and supposing it was unreasonable for Petitioner's counsel to insist that Petitioner's plea would be rejected unless he allocated to the statements regarding a drug conspiracy, Petitioner states no facts that show any resulting prejudice. As discussed above, Petitioner's claim under <u>Johnson</u> is waived by the terms of his plea agreement. Petitioner does not allege that he did not intend to plead guilty to a firearm-related murder, and only alleges that his statements regarding the drug conspiracy were involuntary. (<u>See</u> Pet'r. Reply at 2 ("I explained to her that I was under the impression that I was pleading guilty to a gun related murder, and the fact that Earl Mangin was not killed in relation to the charged drug conspiracy.").) Petitioner's particular claim of ineffectiveness only affords possible relief because of his argument that <u>Johnson</u> calls into question the constitutionality of his sentence if the predicate offense was a "crime of violence," rather than a "drug trafficking crime." Given that any such <u>Johnson</u> claim is waived by the plea agreement, Petitioner cannot show prejudice.

### 2. Direct Appeal

Finally, Petitioner alleges ineffective assistance of counsel in the direct appeal of his conviction. Petitioner claims that his appellate counsel failed to raise non-frivolous arguments on direct appeal and improperly filed an <u>Anders</u> brief seeking withdrawal despite the existence of non-frivolous claims. (Suppl. Pet. at 4-5.) In particular, Petitioner points to a request by the Second Circuit for additional briefing regarding the following statement by this court during the plea allocution: "The only reason you [Petitioner] could appeal would be if you thought I did not properly follow the law in sentencing you." (<u>Id.</u> at 4.) Because the Second Circuit requested

15

further briefing to determine whether this statement by the court was plain error, Petitioner argues a potential non-frivolous claim existed which his appellate counsel failed to raise. (Id. at 4-5.)

As the Government points out, while Strickland applies to claims of ineffective appellate counsel, appellate counsel is not required to raise every non-frivolous issue that could be raised. (Gov't Opp'n at 9.) Instead, appellate counsel's performance must meet prevailing professional norms. Lynch v. Dolce, 789 F.3d 303, 311 (2d Cir. 2015). "To establish prejudice in the appellate context, a petitioner must show that, had his claim been raised on appeal, there is a reasonable probability that it would have succeeded before the [appellate] court." Id.

Appellate counsel's Anders briefs and subsequent withdrawal do not support Petitioner's claims of ineffective assistance. See United States v. 777 Greene Ave., 609 F.3d 94, 100 (2d Cir. 2010) ("[U]nder Anders, where counsel certifies that a direct appeal in a criminal case is frivolous and the appellate court agrees, the defendant has, in essence, received the assistance of counsel to which he is entitled under the Sixth Amendment."). It is also clear that Petitioner was not prejudiced in this case—his repeated statements that he reviewed the written agreement with his attorney and understood the waiver of his right to appeal show that the court's statement in the early portion of his plea allocution did not affect his substantial rights. See Rodgers v. United States, 709 F. App'x 30, 31 (2d Cir. 2017) (summary order) (upholding a collateral attack waiver based on similar statements from petitioner of his comprehension, despite district court's failure to state in the plea colloquy that the sentence could not be collaterally attacked). Petitioner's Anders brief-based argument fails for lack of evidence showing the prejudice required to support a claim of ineffective assistance of counsel.

## III. CONCLUSION

For the foregoing reasons, the Petition (Dkt. 178) is DENIED.

As Petitioner has not made a substantial showing of the denial of any constitutional right, no certificate of appealability shall issue. U.S.C. § 2253(c).

SO ORDERED.

Dated: Brooklyn, New York
       January 22, 2019

NICHOLAS G. GARAUFIS
United States District Judge

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------------X
ANDRE COLLIER,

                              Petitioner,                          **MEMORANDUM & ORDER**

          -against-                                                **10-CR-820-2 (NGG)**
                                                                   **16-CV-3638 (NGG)**

UNITED STATES OF AMERICA,

                              Respondent.
------------------------------------------------------------------------X
NICHOLAS G. GARAUFIS, United States District Judge.

On January 18, 2013, Petitioner Andre Collier pleaded guilty to one count of firearm-

related murder under 18 U.S.C. § 924(j)(1) in connection with the 2009 killing of Earl Mangin in

Staten Island, New York. (Gov't Mem. in Opp'n to Pet. ("Gov't Opp'n") (Dkt. 194) at 3.)

Petitioner was sentenced to 420 months of incarceration and 5 years of supervised release, and

ordered to pay $7,800 in restitution. (Id. at 5). He now brings the instant petition for a writ of

habeas corpus pursuant to 28 U.S.C. § 2255, seeking vacatur of his sentence (the "Petition").

(Pet'r Mot. to Vacate ("Pet.") (Dkt. 178 at ECF p.6)). Petitioner seeks to lodge a collateral

challenge to his sentence on multiple grounds. He first argues that this court lacked subject

matter jurisdiction to convict him of firearm-related murder. (Mem. in Supp. of Pet. ("Pet.

Mem.") (Dkt. 178 at ECF p.19).) Next, he argues that his conviction must be overturned because

§ 924(j)(1) should be struck down as unconstitutionally vague in light of the Supreme Court's

decision in Johnson v. United States, 135 S. Ct. 2551 (2015). (Pet. Mem.) Finally, he makes

multiple claims of ineffective assistance of counsel, alleging deficient representation in a prior

state proceeding, in the plea bargaining process leading up to his conviction, and on direct appeal

of his federal conviction. (Pet'r Suppl. Mem. in Supp. of Pet. ("Suppl. Pet.") (Dkt. 186 at ECF

p.1).) For the reasons stated below, the Petition is DENIED.

1

## I. BACKGROUND

Petitioner does not dispute the essential facts of the murder that led to his conviction. (See Pet'r Reply ("Reply") (Dkt. 197-1) at 4-5.) On November 14, 2009, Petitioner shot Mangin twice in the legs and once in the head on the front steps of Mangin's Staten Island apartment. (Gov't Opp'n at 3.) The murder came one week after a disagreement at a party culminated in the death of Jermaine Dickerson, a close friend of Petitioner's. (Id. at 2.) Mangin was affiliated with the Gorilla Bloods street gang, members of which killed Dickerson. (Id.)

The Petition does not dispute facts in the record showing that Petitioner had previously supplied crack cocaine to Mangin, and that Petitioner had a disagreement with Mangin over drug sales, resulting in an altercation in the summer of 2009 during which Petitioner beat Mangin with a vacuum cleaner. (Reply at 4.) Petitioner does contest that his drug dispute with Mangin was ongoing at the time of the murder, and suggests that Dickerson's killing provided the sole motivation for the murder to which Petitioner pleaded guilty. (Id. at 4-5.)

### A. Procedural History

On March 12, 2010, Petitioner was indicted on state charges of murder, criminal possession of a weapon, and grand larceny. (See Pet'r Writ of Error Coram Nobis (Dkt. 186 at ECF p.56) at 2.) In September 2010, he was offered a plea agreement by the Richmond County District Attorney's office, but rejected the agreement. (See id.; Suppl. Pet. at 5.) Ultimately, on July 8, 2011, the indictment was dismissed and sealed upon application by the state prosecutor. (See July 14, 2016, Decision & Order, People v. Collier, Indictment No. 62-2010 (Dkt. 186 at ECF p.63).)

On December 7, 2010, Petitioner, along with four co-conspirators, was indicted in federal court on drug and firearms charges. (Indictment (Dkt. 15).) On March 1, 2012, the Government

2

filed a six-count superseding indictment, charging Petitioner with, among other things, the firearm-related murder of Earl Mangin in violation of 18 U.S.C. § 924(j)(1). (See Superseding Indictment (Dkt. 65) ¶ 6.) On January 18, 2013, Petitioner pleaded guilty to the charge of firearm-related murder. (Jan. 18, 2013, Min. Entry (Dkt. 130).)

On August 1, 2013, the court imposed a sentence of 420 months imprisonment, within the guidelines range of 360 months to life. (Gov't Opp'n at 5; see Aug. 1, 2013, Min. Entry (Dkt 154).) Petitioner's plea agreement included a waiver of his right to appeal and to collaterally attack his conviction or sentence, "in the event that the court imposes a term of imprisonment of life or below." (See Plea Agreement (Dkt. 194-1) ¶ 4.) Despite having agreed to this provision, Petitioner filed a notice of appeal from his conviction and sentence on August 8, 2013 and requested the appointment of counsel to assist in his appeal. (Pet'r Notice of Appeal (Dkt. 153).)

On March 4, 2014, Petitioner's appellate counsel filed a brief with the Second Circuit requesting, pursuant to Anders v. California, 386 U.S. 738 (1967), that he be relieved as Petitioner's counsel because there existed no non-frivolous issues for appellate review. (Anders Br. for Pet'r ("Anders Br.") (Dkt. 186 at ECF p.24) at 11.) Petitioner's counsel's argument turned largely on Petitioner's statements during his plea allocution that his plea was informed and voluntary, as well as the provision in the plea agreement waiving Petitioner's right to appeal his conviction or sentence. (Id. at 8-10.) On December 22, 2014, the Second Circuit ordered supplemental briefing as to whether this court sufficiently complied with Federal Rule of Criminal Procedure 11(b)(1)(N), which requires that, before the district court accepts a guilty plea, it must inform the defendant of, and determine that he understands, "the terms of any plea-agreement provision waiving the right to appeal or to collaterally attack the sentence." Order, United States v. Collier, No. 13-3075 (2d Cir. Dec. 22, 2014) (quoting Fed. R. Crim. P.

3

11(b)(1)(N)).  Petitioner's counsel filed a supplemental Anders brief on August 22, 2015,

reiterating that the plea hearing established that the plea was knowing and voluntary, and that

any incorrect advice in the plea hearing fell short of plain error and did not prejudice Petitioner.

(Suppl. Anders Br. (Dkt. 186 at ECF p.40).)  On August 28, 2015, the Second Circuit summarily

affirmed Petitioner's conviction and granted his counsel's motion to withdraw.  (Mandate of

USCA (Dkt. 174).)

On June 28, 2016, Petitioner filed a petition for a writ of habeas corpus in this court

pursuant to 28 U.S.C. § 2255, alleging that his conviction was unconstitutional in the wake of the

Supreme Court's 2015 decision in Johnson v. United States, 135 S. Ct. 2551 (2015), and that this

court lacked subject-matter jurisdiction to convict and sentence Petitioner.  (Pet.; see Pet. Mem.

at 1.)

## B.     Johnson v. United States

Because Petitioner challenges his conviction on the ground that § 924(j)(1) is

unconstitutional in light of Johnson v. United States, the court begins by summarizing the void-

for-vagueness doctrine developed by the Johnson line of cases.  Johnson involved a challenge to

the Armed Career Criminal Act ("ACCA"), 18 U.S.C. § 924(e), pursuant to which a defendant

with three prior convictions for a "violent felony or a serious drug offense" was subject to an

increased sentence.  135 S. Ct. at 2555.  In language similar to the subsections defining "crime of

violence" within § 924(c), the ACCA described a "violent felony" as a felony (or similar crime

by an armed juvenile) that either "has as an element the use, attempted use, or threatened use of

physical force against the person of another," or alternatively, "is burglary, arson, or extortion,

involves use of explosives, or otherwise involves conduct that presents a serious potential risk of

physical injury to another." § 924(e)(2)(B) (emphasis added). The underlined language is often referred to as the ACCA's "residual clause."

Johnson began by noting that the Due Process Clause of the Fifth Amendment prohibits criminal prosecution under a statute "so vague that it fails to give ordinary people fair notice of the conduct it punishes, or so standardless that it invites arbitrary enforcement." 135 S. Ct. at 2556-57. The Court concluded that the residual clause failed the due process requirements, stating that "indeterminacy of the wide-ranging inquiry required by the residual clause both denies fair notice to defendants and invites arbitrary enforcement by judges." Id. at 2557. Specifically, "[t]wo features of the residual clause conspire to make it unconstitutionally vague." Id. at 2557. First, it "leaves grave uncertainty about how to estimate the risk posed by a crime." Id. Second, it "leaves uncertainty about how much risk it takes for a crime to qualify as a violent felony." Id. at 2558. Accordingly, the residual clause—though not the remainder of the ACCA's definition of a violent felony—was invalidated. Id. at 2563. A year later, the Court held that its decision in Johnson applied retroactively on collateral review because it announced a new substantive rule of constitutional law. See Welch v. United States, 136 S. Ct. 1257, 1268 (2016).

The principles of Johnson have found application in situations similar to the ACCA's residual clause. In Sessions v. Dimaya, 138 S. Ct. 1204 (2018), the Court struck down the residual clause of 18 U.S.C. § 16(b), which defines "crime of violence" as including "any other offense that is a felony and that, by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense." Dimaya, 138 S. Ct. at 1213. The Court found that this clause, like the one at issue in Johnson,

fatally flawed because it "produces . . . 'more unpredictability and arbitrariness than the Due Process Clause tolerates.'" Id. at 1216 (quoting Johnson, 135 S. Ct. at 2558).

More recently, however, the Second Circuit declined to hold that the residual clause of 18 U.S.C. § 924(c), which increases the criminal penalties for any person who uses or carries a weapon during a "crime of violence" or drug trafficking crime, was unconstitutionally vague. See United States v. Barnett, 903 F.3d 166, 178 (2d Cir. 2018). Within § 924(c), "crime of violence" is defined by an elements clause identical to the one in § 924(e), and also by a residual clause designating as a crime of violence any felony offense that "by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense." § 924(c)(3)(b). The court distinguished this residual clause from the similar clauses at issue in Johnson and Dimaya, stating that "the predicate offense defined by [§ 924(c)(3)(b)] is an element of the crime of pending prosecution, not a crime of prior conviction." Barrett, 903 F.3d at 169. Because a jury, "in deciding guilt, can determine whether the predicate offense 'by its nature, involve[d] a substantial risk that physical force . . . may be used,'" prosecution under the residual clause of § 924(c) does not raise the same constitutional vagueness issues as the statute in Johnson. Id. Under Barrett, the "identification of a crime of violence under § 924(c)(3)(B) is properly made by a jury on a conduct-specific basis," while the court must decide whether a predicate offense was a crime of violence under the "elements clause" found in § 924(c)(3)(A). Id. at 182-84. Where a jury is not properly charged to make such a finding, the instruction will be subject to harmless error analysis by the court. Id. at 184.

## II.    DISCUSSION

A federal prisoner may file a petition to collaterally attack his sentence on the grounds that it was imposed "in violation of the Constitution or laws of the United States." 28 U.S.C. § 2255(a). Petitioner claims that his conviction violates the Fifth Amendment because he was convicted under a statute that should be found void for vagueness, and that it violates the Sixth Amendment because he was deprived of the right to effective assistance of counsel at several steps in his prosecution. (Pet. Mem. at 1; Suppl. Pet. at 2.) Petitioner further challenges his sentence on the grounds this court lacked subject-matter jurisdiction over the firearm-related murder charge for which he was convicted. The Government argues that the petitions in their entirety are barred by the terms of Petitioner's plea agreement, which includes a waiver of the right to collaterally attack his conviction or sentence. (Gov't Opp'n at 5.) Although the court does not agree with the Government that all of Petitioner's arguments are barred by his plea agreement, the court ultimately DENIES the Petition in full.

### A.    Subject Matter Jurisdiction

Petitioner first contends that this court lacked subject-matter jurisdiction to charge, convict, and sentence him absent a finding that the murder took place within the court's territorial or maritime jurisdiction. (Pet. Mem. at 11.) Petitioner's claim is based on the fact that the statute under which he was convicted, § 924(j), incorporates the definition of murder from 18 U.S.C. § 1111, which contains a provision setting forth the penalties for murder within "the special maritime and territorial jurisdiction of the United States," § 1111(b). (See Pet. Mem. at 3-11.)

Petitioner's construction of the statute is inconsistent with the settled interpretation of the relationship between these sections: "[Section] 924(j) 'incorporates only the definition of

7

murder' set out in § 1111(a), not the jurisdictional basis set out in § 1111(b)." United States v. Lee, 660 F. App'x 8, 16-17 (2d Cir. 2016) (summary order) (quoting United States v. Young, 248 F.3d 260, 275 (4th Cir. 2001)), cert. denied, 137 S. Ct. 1599 (2017). "Rather, § 924(j) sets forth its own independent jurisdictional basis by incorporating 18 U.S.C. § 924(c), which covers the commission of 'any crime of violence or drug trafficking crime . . . for which [a] person may be prosecuted in a court of the United States.'" Id. (alterations in original) (quoting § 924(c)(1)(A)); see also United States v. Ostrander, 411 F.3d 684, 687 (6th Cir. 2005) (finding that § 924(j) incorporates only the definition of murder contained in § 1111(a)). Because the firearm-related murder of which Petitioner was convicted was clearly a crime subject to prosecution in a state court, subject-matter jurisdiction existed in this case.

### B.     Waiver of Collateral Attack

In his plea agreement, Petitioner agreed not to file an appeal or collaterally challenge his conviction or sentence "in the event that the [c]ourt imposes a term of imprisonment of life or below." (Plea Agreement ¶ 4; Gov't Opp'n at 5.)  The government argues this waiver provision should preclude collateral challenge, and that the Petition should therefore be denied in its entirety. (Gov't Opp'n at 5.)

With limited exception, courts will enforce a knowing and voluntary waiver of the right to appeal and collateral attack.  See Sanford v. United States, 841 F.3d 578, 580 (2d Cir. 2016) ("While plea agreements are to be applied narrowly and construed strictly against the government, exceptions to the presumption of the enforceability of a waiver . . . occupy a very circumscribed area of our jurisprudence." (alteration in original) (internal citation and quotation marks omitted)).  A defendant who executes such a waiver may not make a collateral challenge to his sentence or conviction based on events that occurred prior to entry of the guilty plea.  See

Parisi v. United States, 529 F.3d 134, 138 (2d Cir. 2008); see also Tollett v. Henderson, 411 U.S. 258, 267 (1973) ("When a criminal defendant has solemnly admitted in open court that he is in fact guilty of the offense with which he is charged, he may not thereafter raise independent claims relating to the deprivation of constitutional rights that occurred prior to the entry of the guilty plea."). While a voluntary waiver of collateral attack is generally enforceable, a criminal defendant does not waive the right to appeal or collateral attack on the basis that "the plea itself, including the waiver, was not intelligent or voluntary." United States v. Ritter, 700 F. App'x 10, 11 (2d Cir. 2017) (summary order) (citation omitted). So, while Petitioner may not collaterally challenge his conviction under a plea agreement based on events that took place prior to the negotiation and acceptance of a plea, he may challenge the adequacy of the process resulting in the plea agreement, if his consent to the agreement was obtained involuntarily or was not given knowingly and competently. See Parisi, 529 F.3d at 138 ("In challenging the ineffectiveness of counsel in connection with a plea agreement, a defendant is challenging the 'constitutionality of the process by which he waived [his right to appeal].'" (alteration in original) (quoting United States v. Hernandez, 242 F.3d 110, 113 (2d Cir. 2001)).

While a waiver term does not bar a defendant from challenging his plea agreement when deficient advice from counsel during the plea-bargaining process effectively rendered his consent to that agreement involuntary, he may not sidestep a collateral attack waiver merely by alleging that counsel's advice caused him to bargain from a weakened position. Parisi, 529 F.3d at 138-39. Although "[e]verything that occurs prior to a guilty plea or entry into a plea agreement informs the defendant's decision to accept or reject the agreement," a claim for ineffectiveness must rest on more than an allegation that counsel's advice before the plea-bargaining stage ultimately led the defendant to consent to a plea from an unfavorable bargaining position. See

9

id. at 138. A defendant cannot show consent was not intelligent or voluntary merely by pointing out "the multitude of ways in which pre-plea events might reduce the strength of the defense and worsen the defendant's bargaining power." Id.

Petitioner's Johnson claim is barred by the terms of his plea agreement. Petitioner does not allege that he failed to understand the offense to which he was pleading due to ineffective assistance of counsel; rather, he argues that his conviction must be overturned because of a change in law announced by the Supreme Court after his conviction. (Pet. at 3 ("The Petitioner's contention is that the Supreme Court's recent decision in Johnson . . . renders the residual clause of [§ 924(c)] unconstitutionally vague . . . .").) The Second Circuit has clearly announced that collateral attack waivers in this context remain enforceable, and that a change in the law does not supply a basis for failing to enforce a plea agreement's collateral attack waiver: "the possibility of a favorable change in the law after a plea is simply one of the risks that accompanies pleas and plea agreements." Sanford, 841 F.3d at 580 (quoting United States v. Lee, 523 F.3d 104, 107 (2d Cir. 2008)). For this reason, the Second Circuit has enforced waivers in direct appeals despite the presence of Johnson claims. See id. at 581 (collecting cases).

Petitioner has also waived his ineffectiveness claim regarding an early state plea agreement that he rejected. Petitioner alleges that, in 2010, he received—and rejected—a plea offer in the course of his state prosecution. (Suppl. Pet. at 5-6.) He claims that he only rejected the state plea offer due to his state-court counsel's "erroneous advice," and that, had he accepted the plea, he would have escaped the federal charges for which he is now serving a sentence. (Id. at 5-6.) Whatever the merits of this claim, it is barred by the collateral-attack waiver in Petitioner's plea agreement. Even if Petitioner had received legally deficient advice which caused him to reject the state plea agreement, that sequence of events could not render

10

Petitioner's acceptance of the <u>federal</u> agreement constitutionally deficient. Petitioner's ineffectiveness claim regarding his state counsel does not allege that his agreement to the federal collateral waiver provision was incompetent or unknowing. (<u>See</u> <u>id.</u> at 5-6.) Petitioner knowingly gave up his right to challenge his conviction, and his rejection of the prior state plea in no way casts doubt on the sufficiency of advice from his federal counsel, nor on the adequacy of the process that culminated in his voluntary acceptance of the federal plea agreement. The collateral-attack waiver in his plea agreement therefore bars this claim.

### C.   Ineffective Assistance Of Counsel

In addition to the waived claim of ineffective assistance during state proceedings, Petitioner alleges ineffective assistance of counsel during the plea bargaining process leading up to his federal conviction and on direct appeal of his conviction. Because the Sixth Amendment provides criminal defendants with the right to effective assistance of counsel, inadequate representation is a basis for relief under § 2255. <u>Morales v. United States</u>, 635 F.3d 39, 43 (2d Cir. 2011). Petitioner's claims on this front survive his waiver of collateral attack because he the allegedly ineffective assistance affected the validity of the plea itself. <u>See</u> <u>United States v. Lewis</u>, 717 F. App'x 21, 24-25 (2d Cir. 2017) (summary order).

To establish a claim for ineffective assistance of counsel under the Sixth Amendment, a petitioner must satisfy the stringent two-prong test set forth in <u>Strickland v. Washington</u>, 466 U.S. 668 (1984):

> First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.

<u>Id.</u> at 687.

Because it "is all too tempting for a defendant to second-guess counsel's assistance after conviction or adverse sentence," judicial scrutiny of counsel's performance must be highly deferential and "a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." Id. at 689. The standard for prejudice is also stringent: "The defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id. at 694. The two-part standard of Strickland also applies in the context of a criminal defendant's right to effective assistance in considering the offer of a plea bargain. Lafler v. Cooper, 566 U.S. 156, 162-63 (2012). To demonstrate prejudice in the context of plea agreements, a defendant must show the outcome of the plea process would have been different with competent advice. Id. "If th[e] right [to effective counsel] is denied, prejudice can be shown if loss of the plea opportunity led to a trial resulting in a conviction on more serious charges or the imposition of a more severe sentence." Id. at 168.

A petitioner making a collateral ineffectiveness challenge is entitled to an evidentiary hearing "[u]nless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief." 28 U.S.C. § 2255(b); see Raysor v. United States, 647 F.3d 491, 494 (2d. Cir 2011). To warrant a hearing, a defendant "need establish only that he has a 'plausible' claim of ineffective assistance of counsel, not that 'he will necessarily succeed on the claim.'" Puglisi v. United States, 586 F.3d 209, 213 (2d Cir. 2009) (quoting Armienti v. United States, 234 F.3d 820, 823 (2d Cir. 2000)). "Moreover, '[t]he procedure for determining whether a hearing is necessary is in part analogous to . . . a summary judgment proceeding." Raysor, 647

F.3d at 494 (quoting Puglisi, 586 F.3d at 213). "If material facts are in dispute, a hearing should usually be held, and relevant findings of facts made." Id. (quoting Puglisi, 586 F.3d at 213).

### 1. Federal Plea Proceedings

Petitioner claims ineffective assistance of counsel in the consideration of his federal plea bargain. Specifically, he contends that he suffered prejudice resulting from his counsel's alleged delay in filing motions following Petitioner's indictment. (Suppl. Pet. at 3.) He further alleges that his agreement was "influenced" by his counsel's insistence that a plea would only be accepted if he admitted the murder was in furtherance of a charged drug conspiracy—a fact which he claims his counsel knew was false at the time of the agreement. (Id. at 1-3.) Petitioner suggests that, had he not made this admission, his sentence would constitute an application of the residual clause of § 924(c), making him eligible for relief under Johnson. Petitioner argues he is entitled to an evidentiary hearing to determine whether he was effectively "coerced" into accepting the terms of the plea agreement by his counsel's advice that he allocute to the statement regarding a charged drug conspiracy. (Pet'r. Reply at 5.)

Petitioner does not allege facts sufficient to show ineffective assistance of counsel with regard to the filing of defense motions. While he may have wanted his counsel to file a motion for a speedy trial, Petitioner has not shown that counsel's failure to do so was unreasonable or prejudiced him. The claim that the exclusion of time allowed the Government to gain a strategic advantage in its prosecution of Petitioner (Suppl. Pet. at 3) does not rise to the level of unconstitutional conduct. Petitioner cannot demonstrate "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different," Strickland, 466 U.S. at 694, and so the court rejects his claim of ineffective assistance of counsel regarding the filing of defense motions.

Petitioner also alleges that his plea was involuntary and "coerced" because counsel advised him that his plea would only be accepted if he pleaded guilty to committing the murder in furtherance of the charged drug conspiracy. (Pet'r. Reply at 3-4.) Petitioner alleges his counsel knew that the murder was not committed in furtherance of a drug conspiracy, and asks for an evidentiary hearing to determine whether his plea was coerced. (Pet'r. Reply at 1-2, 4.) On the facts alleged, Petitioner cannot establish ineffective assistance of counsel in violation of the Sixth Amendment.

First, as the Government correctly argues, this court is entitled to rely on Petitioner's statements from his plea colloquy which establish that he committed the murder of Earl Mangin in furtherance of a drug conspiracy. (Gov't Opp'n at 13.) Indeed, during his plea allocution, Petitioner confirmed that his plea was voluntary, that he was not threatened or forced to offer his guilty plea, and that he committed the murder "in relation to a drug conspiracy [he] participated in." (Id. at 41-42; see Tr. of Jan. 18, 2013, Hrg. (Dkt. 129-2) at 23:6-7.) The court is entitled to rely on such sworn statements in open court. See Rosenberger v. United States, 133 F. App'x 799, 801 (2d Cir. 2005) (summary order) (holding that where a petitioner "set[s] forth no evidence, other than his self-serving, conclusory allegations, that he was coerced into pleading guilty," a court may rely on statements in a plea allocution when the "plea allocution, when viewed as a whole, reflects his understanding of the consequences of his guilty plea"); see also Puglisi, 586 F.3d at 214 ("[A] district court need not assume the credibility of factual assertions . . . where the assertions are contradicted by the record in the underlying proceeding."). Petitioner states that he would have preferred not to allocute as he did, but did so on advice of counsel. (Reply at 2.) However, he does not point to specific incidents of "coercion," nor does

he claim that he was misled by his counsel as to the nature of the offense to which he pleaded guilty.

Even assuming Petitioner's allegations are true, and supposing it was unreasonable for Petitioner's counsel to insist that Petitioner's plea would be rejected unless he allocated to the statements regarding a drug conspiracy, Petitioner states no facts that show any resulting prejudice. As discussed above, Petitioner's claim under <u>Johnson</u> is waived by the terms of his plea agreement. Petitioner does not allege that he did not intend to plead guilty to a firearm-related murder, and only alleges that his statements regarding the drug conspiracy were involuntary. (<u>See</u> Pet'r. Reply at 2 ("I explained to her that I was under the impression that I was pleading guilty to a gun related murder, and the fact that Earl Mangin was not killed in relation to the charged drug conspiracy.").) Petitioner's particular claim of ineffectiveness only affords possible relief because of his argument that <u>Johnson</u> calls into question the constitutionality of his sentence if the predicate offense was a "crime of violence," rather than a "drug trafficking crime." Given that any such <u>Johnson</u> claim is waived by the plea agreement, Petitioner cannot show prejudice.

        2.     <u>Direct Appeal</u>

Finally, Petitioner alleges ineffective assistance of counsel in the direct appeal of his conviction. Petitioner claims that his appellate counsel failed to raise non-frivolous arguments on direct appeal and improperly filed an <u>Anders</u> brief seeking withdrawal despite the existence of non-frivolous claims. (Suppl. Pet. at 4-5.) In particular, Petitioner points to a request by the Second Circuit for additional briefing regarding the following statement by this court during the plea allocution: "The only reason you [Petitioner] could appeal would be if you thought I did not properly follow the law in sentencing you." (<u>Id.</u> at 4.) Because the Second Circuit requested

15

further briefing to determine whether this statement by the court was plain error, Petitioner argues a potential non-frivolous claim existed which his appellate counsel failed to raise. (Id. at 4-5.)

As the Government points out, while Strickland applies to claims of ineffective appellate counsel, appellate counsel is not required to raise every non-frivolous issue that could be raised. (Gov't Opp'n at 9.) Instead, appellate counsel's performance must meet prevailing professional norms. Lynch v. Dolce, 789 F.3d 303, 311 (2d Cir. 2015). "To establish prejudice in the appellate context, a petitioner must show that, had his claim been raised on appeal, there is a reasonable probability that it would have succeeded before the [appellate] court." Id.

Appellate counsel's Anders briefs and subsequent withdrawal do not support Petitioner's claims of ineffective assistance. See United States v. 777 Greene Ave., 609 F.3d 94, 100 (2d Cir. 2010) ("[U]nder Anders, where counsel certifies that a direct appeal in a criminal case is frivolous and the appellate court agrees, the defendant has, in essence, received the assistance of counsel to which he is entitled under the Sixth Amendment."). It is also clear that Petitioner was not prejudiced in this case—his repeated statements that he reviewed the written agreement with his attorney and understood the waiver of his right to appeal show that the court's statement in the early portion of his plea allocution did not affect his substantial rights. See Rodgers v. United States, 709 F. App'x 30, 31 (2d Cir. 2017) (summary order) (upholding a collateral attack waiver based on similar statements from petitioner of his comprehension, despite district court's failure to state in the plea colloquy that the sentence could not be collaterally attacked). Petitioner's Anders brief-based argument fails for lack of evidence showing the prejudice required to support a claim of ineffective assistance of counsel.

III.    **CONCLUSION**

For the foregoing reasons, the Petition (Dkt. 178) is DENIED.

As Petitioner has not made a substantial showing of the denial of any constitutional right, no certificate of appealability shall issue.  U.S.C. § 2253(c).

SO ORDERED.

s/Nicholas G. Garaufis

Dated: Brooklyn, New York
      January 22, 2019

NICHOLAS G. GARAUFIS
United States District Judge